## THOS. CHADWELL AND OTHERS, *ex parte*.

1. CORPORATION. *Organization of.* The Court of Chancery has no power to organize a corporation for any purpose not authorized by general law.
2. APPEAL DOES NOT LIE FROM REFUSAL TO INCORPORATE. An appeal cannot be taken from the refusal to organize a corporation.

Cases cited: State *v.* Armstrong, 3 Sneed, 634; Mayor and Aldermen of Morristown *v.* Shelton, 1 Head, 24: C. W. Hall, *et als., v.* Mabry, at Knoxville, 1872.

Code cited: ?1507 *i.*

Acts cited: Act of 1870–1, ?8; 1849, ch. 17.

Constitution: Article XI, ?8.

See Cooper's Chancery Reports, Vol. 1, p. 95.

### FROM DAVIDSON.

Appeal from the Chancery Court. W. F. COOPER, Chancellor.

JNO. A. CAMPBELL for petitioners.

NICHOLSON, C. J., delivered the opinion of the Court.

This is an application to the Chancellor at Nashville, by Thos. Chadwell, and other citizens of Davidson County, to be constituted a body politic and corporate, by the name and style of the "Bersheba Springs Company." They ask for the usual corporate powers, together with the right to purchase, hold, and dispose of, by sale, lease, or otherwise, all such real estate or personal property as may be necessary to the

business of the company, and especially to hold, by purchase or otherwise, a certain property, real and personal, in Grundy County, Tennessee, known as "Bersheba Springs," embracing several hundred acres of land, upon which is a hotel and other buildings. They ask for powers to erect buildings, make improvements, and do any and all things necessary, in fitting, furnishing, and keeping a hotel in all its branches, and to repair and keep in order the public roads leading to said hotel, and to purchase and own way stations, etc. They ask that their capital stock may be $75,000, divided into shares of $100 each, etc.

Chancellor Cooper refused to grant the prayer of the petitioners upon two grounds:

1. Because there is no general law passed by the Legislature which authorizes the organization of such a corporation by the Chancery Court.

2. Because the Legislature has no power, under the Constitution, to vest in the Chancellor the power to create corporations of any kind, and, hence, that the Acts of the Legislature, so far as they may have sought to confer such power on the Chancery Court, are unconstitutional and void.

The petition having been dismissed, the Chancellor refused to grant an appeal to this Court, upon the ground that in organizing or refusing to organize corporations, his action was purely ministerial, and, therefore, his action constituted no such judgment or decree as authorized an appeal therefrom, but that the parties could test this ruling by writ of error.

It is not insisted that there is any general law providing for the organization of corporations .for the purpose of managing and carrying on hotels, as prayed for in the petition; but it is insisted, that under §1507$i$ of the Code (§10 of the Act of 1870–1), the Chancery Courts have full power to incorporate private companies, to carry on any local business, confined in its locality to the limits of a single county, and that if the Court find that the business proposed is legitimate, and not hurtful to the public · good, then letters of incorporation, or charters, shall issue.

It is obvious that this provision of the Statute was enacted under the assumption, that as to such local business, the Legislature had the constitutional right to transfer to the Chancery Courts the power to create and organize such corporations. The determination of the question thus presented, involves the construction of Art. XI, §8 of the Constitution of 1870, as follows:

§8. The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land, nor to pass any law granting to any individual or individuals rights, privileges, immunities, or exemptions other than such as may be, by the same law, extended to any member of the community who may be able to bring himself within the provisions of such law. · No corporation shall be created, or its powers increased or diminished, by special laws; but the General Assembly shall provide, by general laws, for

the organization of all corporations hereafter created, which laws may, at any time, be altered or repealed; and no such alterations or repeal shall interfere with, or divest, rights which have become vested."

This section, down to the clause commencing "no corporation shall be created, etc.," is a copy of the corresponding section in the Constitution of 1834, in which there was this proviso:

"*Provided,* always, the Legislature shall have power to grant such charters of incorporation as they may deem expedient for the public good."

In the case of the *State* v. *Armstrong,* 3 Sneed, 634, it was held, that the power to create corporations, reserved to the Legislature by the proviso to §8, Art. XI of the Constitution of 1834, could not be transferred by the Legislature to the judicial department of the government except by special authority of the Constitution itself. It follows, necessarily, that if the Constitution of 1870 has failed to give special authority to the Legislature to devolve the power of creating corporations on the judicial department, the Act of 1870–71, in so far as it undertakes to make such devolution of power upon the Chancery Courts, is unconstitutional and void.

This brings us to the direct question: Does the Constitution of 1870, Art. XI, §8, either expressly or by necessary implication, authorize the Legislature to vest in the Courts the power to create as well as to organize corporations?

It is a matter of legislative and judicial history,

that §8 of Art. XI of the Constitution of 1834, was intended to operate as a check upon that species of private legislation which conferred special privileges and benefits on individuals, which were not enjoyed by all the citizens of the State. It is equally a matter of history, that the object of the Constitution was, in a great measure, defeated and frustrated by the liberal exercise by the Legislature of the power to grant charters of incorporation, conferred by the *proviso* to that section. When the Convention of 1870 assembled, one of the evils which was pointed out by public sentiment as calling for correction was the unrestricted exercise by the Legislature of the power to create corporations. The remedy for this evil was furnished in the clause of §8, Art. XI, referred to, which was manifestly intended to apply to corporations that might thereafter be created, the rule of equality and uniformity of rights and privileges, which constitute the true meaning and spirit of the preceding portion of that section. Does the language of the clause, when fairly interpreted, carry out this rule, and make the several clauses of the section harmonize, in spirit and in purpose? The clause commences: "No corporation shall be created, or its powers increased or diminished, by special laws." This is an express prohibition against the granting of charters of corporation by the enactment of special laws, and clearly takes from the Legislature the power to enact a special law, creating a single corporation. But it was not thereby intended that no more corporations should be thereafter created, but they were

not to be created by special law. How then were they to be created? The clause proceeds: "But the General Assembly shall provide, by general laws, for organization of all corporations hereafter created," etc. This language contemplates two distinct processes, in order that a corporation may commence operations. First, it must be created, that is, the authority to exist as a corporation must be communicated; and, second, after this authority is communicated, the corporation must be organized, that is, it must be recognized by competent authority as having complied with the terms of its creation.

It is clear that the General Assembly is to provide the general laws under which the organization is to take place; but it is not required that the General Assembly shall organize, that may be devolved upon the Courts, or any other designated branch of the government. Before organization there must be creation. Until there is a capacity to exist as a corporation, there can be no organization as a corporation. This capacity can only be created or communicated by the General Assembly, unless, by special authority of the Constitution, the General Assembly may devolve it on some other agency. No such special authority is given by the Constitution, and no power, except by general laws, to provide for organizing these corporations thereafter created, that is, those corporations which the General Assembly may arrange to bring into being by the enactment of general laws prescribing the terms, forms, privileges, liabilities, etc., to attach to them.

Such corporation so created shall be organized under general laws for that purpose.

What the Convention intended by the language, "the General Assembly shall provide by general laws for the organization of all corporations hereafter created," is clearly illustrated by the Act of 1849, chapter 17, entitled "An Act for the incorporation of the citizens of any town, city, or village in the State of Tennessee, who may claim it." This Act provided that the inhabitants of any village, town or city might form to themselves a body corporate, by such name and style as they might select, and by such name and style have perpetual succession, etc. It then specified the general powers which such corporations should enjoy and exercise, and provided that when the inhabitants of any such village, town, or city should desire to be incorporated under this Act, they were to present their petition to the County Court, and upon this being done, they being spread upon the minutes, and a copy ordered to be registered, they were organized as a corporation.

This was a general law, under which any village, town, or city could become incorporated, with the powers, privileges and rights specified in the law. It was a full declaration of the legislative will. It created the inhabitants of any village, town, or city a corporation, that is, made them legally capable of being a corporation, by presenting their petition to the County Court. If their petition pursued the provisions of the law, the County Court had no discretion, but

were required to receive the petition, and have it spread upon their minutes, and when this was done, the corporation created by the Legislature was organized by the County Court. The constitutionality of the Act of 1849, ch. 17, was tested, in the case of *Mayor and Aldermen of Morristown* v. *Shelton*, 1 Head, 24, in which case this Court held, that the Act was clearly constitutional.

The same policy which induced the Legislature, in 1849, to provide for the incorporation and organization of all villages, towns and cities that might desire incorporation, induced the Convention, in 1870, to extend the policy to all corporations, and to take from the Legislature all the power to create corporations, except under general laws for their organization and creation. To suppose that the Convention intended to confer upon the Legislature the power to authorize the Courts to create as well as to organize corporations, would be to attribute to them the folly of authorizing the existence, in every county of the State, of a tribunal empowered to create just as many and such corporations as each tribunal might determine to be proper, thus increasing an hundred fold the evil intended to be corrected. Nor do we see, in the language employed by the Convention, either any uncertainty or ambiguity of meaning, especially when interpreted in the light of the judicial and legislative history of the State.

The language is imperative, requiring the Legislature to pass general laws, under which all Corporations should be organized. The Act of January 30,

1871, entitled "An Act to authorize the Chancery Courts in this State to grant letters of incorporation," was intended to carry out the requirements of the Constitution. Provisions are made by this Act, under which corporations, for various purposes therein specified, may be organized by application to the Chancery Courts. As to these corporations, the objects of the constitutional requirements are sufficiently accomplished and provided for. The objection to the Act is confined to those provisions in which the Legislature has assumed that power could be conferred on the Chancery Courts to organize other corporations than those originated and specially provided for. In this respect, we are of opinion that the Legislature misconceived and transcended the powers vested in them by the Constitution. We do not hold, that a general law might not be so framed as to authorize the organization of corporations for carrying on any business or pursuit in which the combination of capital, skill and labor might be desired, but such general law should contain such an enumeration of the powers and privileges to be enjoyed by such corporations as would leave nothing to the discretion of the Chancellor, and limit his action simply to the ministerial duty of receiving the application, and when conforming to the general laws, ordering it to be spread upon his minutes, and then to be registered, as required by law. We find no such general provision in the Act of 1871, under which the Chancellor was authorized to organize the petitioners as a corporate body in the business of hotel keeping, without assuming

powers which could only be exercised by the Legislature.

The constitutional power of the Legislature to devolve upon the Chancery Courts jurisdiction to create corporations, under the Act of July 30, 1871, was considered by the Supreme Court at the September Term, 1872, at Knoxville, in the case of *C. W. Hall, et als.,* v. *J. A. Mabry.* It was a petition by Hall and others to have amendments made to a macadamized turnpike charter, granted in 1866. The petition was demurred to, upon the ground that the General Assembly has no power to delegate authority to the Chancery Courts to grant charters of incorporation, or to amend charters of incorporated companies, as prayed for.

The Court held, that the Constitution explicitly prohibits the Legislature from creating a corporation by any special law, and as clearly directs, that it shall provide, by general laws, for the organization of all corporations to be thereafter created. And it was further held, that provision has been made, by the general law of January 30, 1871, for organization of corporations by the Chancery Courts. "This law," say the Court, "is a general one, extending to every case in which an application may or can be made for corporate privileges."

. By this language we understand the Court to hold, that the law referred to confers upon the Chancery Court no powers, in any case, to create a corporation, but that in every case in which provision is made by general laws for the creation of corporations, this Act

authorizes the Chancery Court to organize them by granting charters in pursuance of the general law.

Hence, the Court say, in conclusion, "·We are, therefore, of opinion, that the Chancery Court has power, under the Act of January 30, 1871, to organize corporations for the construction of macadamized, graded, turnpike and plank roads," these roads being specifically provided for in §2 of the Act of January 30, 1871.

But we find no general law, either in the Code or in subsequent Acts, which provides for the creation of corporations for carrying on hotels, with the specific privileges to be exercised laid down. No such provision for the creation of such corporations have been made by general law. It follows, that none such can be organized by the Chancery Courts until some general law providing for such corporations shall be enacted. No other than ministerial duties and powers can be constitutionally exercised by Chancellors in organizing corporations, and, therefore, there was no error in the refusal of Chancellor Cooper to grant an appeal.

His decree is sustained, with costs.